IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MELANIE SCOTT,<br>　　　Plaintiff,<br><br>v.<br><br>SEEMA KAZI, M.D., P.A. d/b/a MID<br>CITIES PSYCHIATRY,<br>　　　Defendant. | §<br>§<br>§<br>§　Civil Action No. 3:21-CV-2733-S<br>§<br>§<br>§<br>§ |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**

Based on the relevant filings and applicable law, *Plaintiff's Emergency Motion for Temporary Restraining Order*, filed April 11, 2022 (doc. 12),[1] should be **DENIED**.

## I. BACKGROUND

On November 3, 2021, Melanie Scott (Plaintiff) sued her former employer, Seema Kazi, M.D., P.A. d/b/a Mid Cities Psychiatry (Defendant), for employment discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, the Pregnancy Discrimination Act, and Chapter 21 of the Texas Labor Code, § 21.001 *et seq.*, as amended. (*See* doc. 1.) She contends Defendant terminated her employment as a physician assistant on November 3, 2020, shortly after she was hired, after learning she had not disclosed that she was pregnant. (*See id.*) The parties had entered into a Physician Assistant Employment Agreement (Agreement) on September 8, 2020, which provided that Plaintiff would begin employment as a physician assistant with Defendant on or before October 12, 2020. (*See* doc. 21-2 at 1; doc. 24-1 at 1.)[2]

During Defendant's deposition on April 9, 2022, Plaintiff's counsel asked about a record of

---

[1] The motion was referred for findings, conclusions and recommendation by electronic order dated April 12, 2022. (*See* doc. 17.)

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

a follow-up visit on 11/2/2020 for patient "CH" that was Bates-labeled "MCP 0094-101", which she marked as Exhibit 1. (*See* doc. 21-1 at 2-3, 5, 35-36, 43-44; doc. 24 at 16-17, 19, 49-50, 57-58.) Defendant testified that the document was correct and that no changes had been made to it. (*See* doc. 21-1 at 41-42; doc. 24 at 55-56.) Plaintiff's counsel then showed Defendant a different version of the same document that did not bear a Bates label, which she marked as Exhibit 2. (*See* doc. 21-1 at 42-48; doc. 24 at 56-62.) Defendant's counsel asked where Exhibit 2 had come from, and Plaintiff's counsel stated that they could confer about it at a later date. (*See* doc. 21-1 at 49; doc. 24 at 53.) Defendant's counsel stated that she wanted to advise counsel that if her client had taken patient records, there were legal ramifications. (*See id.*)[3]

On April 11, 2022, Defendant's counsel wrote to Plaintiff's counsel to advise that Defendant would be notifying the Texas Medical Board of Plaintiff's "suspected theft of patient records from Mid Cities Psychiatry." (*See* doc. 21-1 at 54; doc. 24-1 at 68.) According to the letter, any information that Plaintiff's counsel wished to provide about how her office came to be in possession of a patient chart should be provided by the close of business that day. (*See id.*) It also stated that the "unauthorized removal of a patient chart not only may violate HIPPA and Texas Medical Privacy Act laws, but may constitute criminal conduct." (*See id.*)

On April 11, 2022, Plaintiff filed an emergency motion for a temporary restraining order

---

[3]The parties' Agreement contained a provision relating to the maintenance of patient files:

> 1.5   Patients' Files.  All patient records, charts, case histories, files, personnel files, regular files and other documents concerning patients treated by PA or any physician or other practitioner on behalf of Association shall belong to and remain the property of Association and shall be maintained on Association's electronic medical records platform.

(*See* doc. 21-2 at 2-3; doc. 24-1 at 2-3.)

(TRO) seeking to enjoin Defendant and MCP from allegedly violating the anti-retaliation provisions of Title VII by filing any criminal action or complaint with the Texas Medical Board against her for suspected theft of patient records. (*See* doc. 12.) She also filed the two exhibits to Defendant's deposition "provisionally under seal" and souht to provisionally seal those documents. (*See* docs. 13, 14.) Defendant responded that counsel's letter was not a threat of retaliation, but a professional courtesy to advise of the concern that Plaintiff was in possession of a stolen patient chart and may have violated several laws, including HIPPA, and to provide an opportunity to submit an explanation before Defendant took necessary action to protect the patient's rights. (*See* doc. 16.)

The parties were ordered to meet and confer face-to-face, and to either file a joint submission that set forth any remaining disputed issues with each party's position and supporting authority or submit an agreed order. (*See* doc. 20.) They filed their joint submission and appendices on April 26, 2022. (*See* docs. 21, 22, 24.) The joint submission limits the disputed issues to whether Defendant should be enjoined from (1) filing a complaint with the Texas Medical Board against Plaintiff for suspected theft of patient records, and (2) notifying "CH" that Plaintiff is in possession of a copy of her patient record. (*See* doc. 21 at 2, 15.) Plaintiff contends that lodging a complaint against her professional license is "clear retaliation", while Defendant maintains that it is legally required to report Plaintiff's actions, which violate HIPPA and other statutes.

An evidentiary hearing was scheduled for, and conducted on the record on, May 3, 2022. The parties appeared through counsel, who agreed that all relevant evidence had previously been submitted in their appendix in support of the joint submission, that no affidavits had been submitted, and that no further testimony or evidence would be presented at the hearing. Plaintiff's counsel also confirmed that Plaintiff did not deny that she was in possession of a patient record for "CH",

Defendant had not produced the second version of the record used during her deposition during discovery, the record contained no evidence Defendant had authorized Plaintiff to take a copy of the record after her termination, and Plaintiff was not alleging that she had permission from "CH" to take a copy of the record after her termination.

## II. TEMPORARY RESTRAINING ORDER

A party may obtain a TRO without notice to the other side if it satisfies the necessary requirements, which are:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). The party seeking a TRO or preliminary injunction has the burden to show entitlement to it. *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987).

Here, Plaintiff did not satisfy the requirements for a TRO under Rule 65(b) because she failed to submit an affidavit or verified complaint which clearly showed an immediate, irreparable injury, loss, or damage that would result before the Defendant could be heard in opposition. (*See* doc. 12.) She also failed to provide a written certification of the efforts made to give notice, merely stating in the certificate of conference that the motion was opposed and proffering reasons why notice should not be required. Her motion is subject to denial for this reason alone.

## III. PRELIMINARY INJUNCTION

"To obtain a temporary restraining order, [Plaintiff] must show entitlement to a preliminary injunction." *Mktg. Investors Corp. v. New Millennium Bank*, No. 3:11-CV-1696-D, 2011 WL 3157214, at *1 (N.D. Tex. July 26, 2011) (Fitzwater, C.J.) (citations omitted). A preliminary

4

injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24 (2008); *see also Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009). To obtain a preliminary injunction, the movant must establish: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) [that] the threatened injury to the movant outweighs the threatened harm to the party sought to be enjoined; and (4) [that] granting the injunctive relief will not disserve the public interest." *City of Dallas v. Delta Air Lines, Inc.*, 847 F.3d 279, 285 (5th Cir. 2017) (citation and quotation omitted); *see also Tex. Midstream Gas Servs., LLC. v. City of Grand Prairie*, 608 F.3d 200, 206 (5th Cir. 2010). The party seeking the preliminary injunction bears the burden of persuasion on all four requirements. *Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 253 (5th Cir. 2009). If the movant fails to carry the "heavy burden" to show each of the four prerequisites, a preliminary injunction is not warranted. *See Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985). The Fifth Circuit has recently held in an unpublished opinion that a preliminary injunction is available to plaintiffs suing private employers under Title VII, even if they have not first exhausted their administrative remedies. *Sambrano v. United Airlines, Inc.*, No. 21-11159, 2022 WL 486610, at *4-5 (5th Cir. Feb. 17, 2022) (citing *Drew v. Liberty Mutual Ins. Co.*, 480 F.2d 69, 72 (5th Cir. 1973)).[4]

### A. **Likelihood of Success**

To establish the first element of likelihood of success on the merits, a "plaintiff must present a prima facie case but need not show that he is certain to win." *Janvey v. Alguire*, 647 F.3d 585, 596

---

[4] The Fifth Circuit has also found that ancillary jurisdiction exists over a retaliation claim growing out of an administrative charge that is properly before the court. *In Gupta v. East Texas State Univ.*, 654 F.2d 411 (5th Cir. Unit A Aug. 1981). Plaintiff's allegations that Defendant intends to retaliate against her for filing this lawsuit by reporting to the licensing board sufficiently grow out of the charge that is the subject of this lawsuit.

(5th Cir. 2011). The first element is assessed by looking at standards provided by substantive law. *Id.* (citing *Roho, Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir. 1990)).

Title VII makes it unlawful for employers to retaliate against an individual because she has opposed any practice made an unlawful employment practice by the relevant statutes, or because she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the relevant statute. *See* 42 U.S.C. § 2000e–3(a); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) (quoting § 2000e–3(a)). Title VII retaliation claims that are based on circumstantial evidence are analyzed under the familiar burden-shifting framework outlined in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020); *Wheat v. Florida Parish Juvenile Justice Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016); *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002). A plaintiff must first establish a *prima facie* case of retaliation by showing that: (1) she engaged in activity protected by Title VII; (2) a materially adverse employment action against her occurred;[5] and (3) there was a causal link between her protected activity and the adverse action. *Wheat*, 811 F.3d at 705*; see also Brown*, 969 F.3d at 577. If she makes this showing, the burden then shifts to the employer "to provide 'a legitimate, non-discriminatory reason' for the adverse employment action." *Brown*, 969 F.3d at 577 (quoting *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004)). If the employer provides a legitimate

---

[5]Unlike discrimination claims, which require that the adverse action be an "ultimate employment decision," retaliation claims are governed by a less stringent standard. *Johnson v. Halstead*, 916 F.3d 410, 420 (5th Cir. 2019) (citing *Burlington*, 548 U.S. at 57); *see also Porter v. Houma Terrebonne Hous. Auth Bd. of Comm'rs*, 810 F.3d 940, 945-46 (5th Cir. 2015) (explaining that the standard is "less demanding" than an "ultimate employment decision") (citations omitted). The adverse action requirement is not limited to "ultimate employment decisions," such as hiring, granting leave, discharging, promoting or compensation. *Porter*, 810 F.3d at 945-46. It includes employer actions that a reasonable employee would consider "materially adverse," "which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 57. Conduct that occurred outside the workplace or after employment has ended is also included. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997) ("[W]e hold that former employees are included within [Title VII] § 704(a)'s coverage.").

6

non-discriminatory or non-retaliatory reason, the plaintiff must then show that the proffered reason is pretextual. *See id.* Ultimately, the plaintiff must establish "must establish that . . . her protected activity was a but-for cause of the alleged adverse action by the employer." *Wantou v. Wal-Mart Stores Texas, L.L.C.*, 23 F.4th 422, 436 (5th Cir. 2022) (quoting *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 362 (2013)).[6] "What's more, [she] must produce 'substantial evidence' of pretext." *Jones v. Gulf Coast Restaurant Group, Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001)).

Here, neither Plaintiff's portion of the joint submission nor her original 6-page motion specifically discuss the likelihood of success on the merits of the retaliation claim underlying her request for injunctive relief. She does not list or address the required elements and how she has met them. For that reason, she has not met her burden. Even assuming for purposes of her motion that she has brought forward sufficient evidence of a *prima facie* case, however, Defendant has provided legitimate non-discriminatory or non-retaliatory reasons for taking the adverse actions Plaintiff seeks to enjoin. It has identified state and federal statutes that it contends require notice of HIPPA[7]

---

[6] The "but-for" standard for establishing pretext in a retaliation case is higher than the pretext standard in a discrimination case:

> "At first glance, the ultimate issue in an unlawful retaliation case— whether the defendant discriminated against the plaintiff because the plaintiff engaged in conduct protected by Title VII—seems identical to the third element of the plaintiff's prima facie case—whether a causal link exists between the adverse employment action and the protected activity." *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996) (emphases omitted). "However, the standards of proof applicable to these questions differ significantly." Id. "The ultimate determination in an unlawful retaliation case is whether the conduct protected by Title VII was a 'but for' cause of the adverse employment decision." *Id.* "The standard for establishing the 'causal link' element of the plaintiff's prima facie case is much less stringent." *Id.*

*Saketkoo v. Administrators of Tulane Educational Fund*, __F. 3d __, 2022 WL 1183824, at *4–5 (5th Cir. 2022).

[7] HIPPA stands for Health Insurance Portability and Accountability Act.

violations to the patient and the state licensing board.

In response to Defendant's proffered reasons, Plaintiff has brought forward no evidence, much less "substantial evidence", to meet her burden on the ultimate issue of but-for causation. Although she offers "assurances" that she has maintained the confidentiality of the patient's information and points to Defendant's production of a redacted version of the same record, she has not refuted Defendant's arguments regarding its statutory obligations to report her unauthorized post-termination possession of a patient record. She has not identified any legal basis that would allow it to discretion to not comply with those obligations. She has also not identified any legal authority to support her argument that this Court may enjoin Defendant from complying with those legal or statutory reporting obligations. Although she identifies cases finding that an employer's reporting of false information to state agencies, filing false criminal charges, or publicly releasing an investigative report containing disparaging statements constitutes retaliation under Title VII, she does not allege that Defendant is planning to report false information or publicly release a disparaging internal investigation. She does not dispute that she is in possession of an unredacted patient file in a form that Defendant did not produce in discovery, that Defendant did not authorize or permit her to remove that file from Defendant's office, or that she did not have the patient's consent to remove it from Defendant's office or to possess it.

On the record before the Court, Plaintiff has not shown a likelihood of success on the merits of her proposed retaliation claim. *See Markell v. Kaiser Foundation Health Plan of the Northwest*, 405 F. App'x 116, 117 (9th Cir. 2010) (finding that the plaintiff did not meet her burden to provide specific and substantial evidence of pretext where the plaintiff conceded that she had copied confidential patient records and taken them home with her in violation of her employer's internal

policies); *Philson v. Hospital Authority of Houston County, Georgia*, No. 5:08-CV-155 (HL), 2009 WL 2477255, at *13–14 (M.D. Ga. Aug. 10, 2009) (finding that merely questioning the employer's proffered reason for the plaintiff's termination was insufficient to create a fact issue regarding whether it honestly believed that she had violated HIPPA and its confidentiality policy at the time of her dismissal, where she admittedly had copied patient mental health records without permission and presented them to one of the employer's internal committees).

B. **Balance of Equities**

Even assuming that Plaintiff has shown irreparable harm for purposes of the second element, the third element requires a preliminary injunction applicant to show that the threatened injury outweighs any harm the injunction might cause. *See Winter*, 555 U.S. at 23. Again, Plaintiff did not specifically address this element in either the joint submission or her original motion. In *Markell*, 405 F. App'x at 117, the Ninth Circuit noted that the plaintiff's actions in copying confidential patient records and taking them home had potentially subjected her employer to liability under federal law. In *Human Touch DC, Inc. v. Merriweather*, No. 15-cv-00741 (APM), 2015 WL 12564162, at *2 (D.D.C. May 18, 2015), the court found that "the balance of equities decidedly weigh[ed] in favor of" *an employer* who was likely to suffer irreparable harm unless temporary relief was granted to enjoin a terminated employee who had removed patients' confidential health information from its secure email system without authorization and had disclosed some of it to a third party. It found the employee's actions compromised the employer's ability to deliver quality health services and maintain patient confidentiality, and that it would suffer irreparable harm to its business reputation if people believed it could not be trusted to maintain the confidentiality of patient health information. *See id.* Given the equities on both sides, Plaintiff has also failed to meet

9

her burden to show that the balance weighs in her favor.

**C.     Public Interest**

The fourth and final element requires a preliminary injunction applicant to show that the injunction is in the public interest. *Winter*, 555 U.S. at 20. Plaintiff fails to address why it is in the public interest to enjoin Defendant from complying with statutory obligations to report the unauthorized removal and possession of private medical information in violation of HIPPA and other statutes without its or patients' knowledge and consent to the patient and the state licensing board. *See Human Touch DC, Inc.*, 2015 WL 12564162, at *2 (finding that the public has a strong interest in maintaining the privacy of a patient's protected health information under HIPPA, as well as protecting a company's trade secrets).

In conclusion, Plaintiff has failed to carry her burden to show why a TRO or a preliminary injunction should issue in this case.

## IV. RECOMMENDATION

Plaintiff's motion should be **DENIED.**

**SO RECOMMENDED** on this 10th day of May, 2022.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

10

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE